UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHEW WING LIM,

Petitioner,

-against-

PAUL ARTETA, et al.,

Respondents.

Case No. 1:26-cv-00461 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Petitioner Shew Wing Lim ("Lim" or "Petitioner") petitions, through counsel, for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the lawfulness of his detention by U.S. Immigration and Customs Enforcement ("ICE") agents and seeking, *inter alia*, his release from ICE custody. *See generally* Dkt. 6 ("Petition" or "Pet.").[1] For the reasons stated below, his Petition is GRANTED.

**BACKGROUND**

**I.    Relevant Statutory Framework**

The Immigration and Nationality Act ("INA") and its implementing regulations set forth the procedures for detaining, paroling, and removing inadmissible noncitizens from the United States. Section 241 of the INA, codified at 8 U.S.C. § 1231, governs the arrest and detention of noncitizens who have a final order of removal. It provides for mandatory detention during the 90-day removal period. *See* 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A); *Godfrey v. Ball*, No. 23-7104, 2024 WL 4471571, at *2 (2d Cir. Oct. 11, 2024) (summary order). The removal period begins

---

[1] Lim filed his habeas petition on January 18, 2026. *See* Dkt. 1. After being notified of a pleading deficiency, Lim refiled the petition on January 20, 2026. *See* Dkt. 6. For purposes of this Opinion, the Court will refer to Lim's refiled petition but will treat his request for habeas relief as having commenced on January 18, 2026.

on the latest of three dates set forth in Section 1231, including, as relevant here, "[t]he date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). After the 90-day removal period expires, Section 1231(a)(6) authorizes the detention of three classes of persons "beyond the removal period": noncitizens who are (1) inadmissible, (2) removable as the result of violations of certain status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy, or (3) determined by the Attorney General to be a risk to the community, or to be unlikely to comply with the order of removal. *Id.* § 1231(a)(6); *see also id.* § 1227(a)(1)(C), (a)(2), (a)(4). If the noncitizen is not detained pursuant to Section 1231(a)(6) after the 90-day removal period and is not removed, Section 1231(a)(3) provides that "the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3). A noncitizen released at ICE's discretion under Section 1231 is subject to an Order of Supervision ("OSUP"). *Funes Gamez v. Francis*, --- F. Supp. 3d ---, No. 25-cv-07429 (PAE), 2025 WL 3263896, at *13 (S.D.N.Y. Nov. 24, 2025) (citing 8 U.S.C. § 1231(a)(3)(A)-(D)).

Relevant here, 8 C.F.R. § 241.4 provides for the "[c]ontinued detention of inadmissible, criminal, and other [noncitizens] beyond the removal period." § 241.4. Specifically, Section 241.4 applies to custody determinations for the noncitizens identified in Section 1231(a)(6), *see id.* § 241.4(a), and provides two bases on which the Government can revoke an OSUP to enforce a removal order, *see id.* § 241.4(*l*).[2]

First, the Government may revoke an OSUP if a noncitizen violates a condition of their release. 8 C.F.R. § 241.4(*l*)(1). Pursuant to paragraph (*l*)(1), in such cases, the noncitizen must be "notified of the reasons for revocation of his or her release or parole," and "afforded an initial

---

[2] To avoid confusion between the letter "l" and the number "1" in Times New Roman, the Court has italicized "l" throughout when referring to this paragraph of section 241.4.

informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.*

Second, the Government may revoke an OSUP on the determination of "[t]he Executive Associate Commissioner [of INS]" if "in the opinion of the revoking official: (i) The purposes of release have been served; (ii) The [noncitizen] violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]; or (iv) The conduct of the [noncitizen], or any other circumstance, indicates that release would no longer be appropriate." *Id.* § 241.4(*l*)(2). Today, the Executive Associate Director of ICE wields the authority to make such a determination.[3] On July 25, 2019, ICE issued an order delegating to Assistant Field Office Directors the Executive Associate Director's authority to take certain actions "relating to warrants of removal, reinstatement of removal, self-removal, and release of [noncitizens] from detention." Dkt. 9-5 ("Delegation Order") at 2. Notably, and as further discussed *infra*, the Delegation Order does not reference the authority to revoke OSUPs. *Id.*

Regardless of the basis for revocation, "redetention under section 241.4 requires notice and an informal interview." *Zhu v. Genalo*, 798 F. Supp. 3d 400, 411-12 (S.D.N.Y. 2025); *see also Funes Gamez*, 2025 WL 3263896, at *17; *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 163 (W.D.N.Y. 2025) ("Courts likewise have interpreted section 241.4(*l*) as requiring an informal interview upon the revocation of release regardless of the reason for the revocation.").

---

[3] "Commissioner means the Commissioner of the Immigration and Naturalization Service prior to March 1, 2003. Unless otherwise specified, references after that date mean the Director of U.S. Citizenship and Immigration Services, the Commissioner of U.S. Customs and Border Protection, and the Director of U.S. Immigration and Customs Enforcement, as appropriate in the context in which the term appears." 8 C.F.R. § 1.2; *see also Funes Gamez*, 2025 WL 3263896, at *14 ("The Executive Associate Director of ICE is today the successor to the Executive Associate Commissioner of INS.").

## II. Procedural History

Lim filed his Petition on January 18, 2026, from the Orange County Correctional Facility in Goshen, New York. Pet. ¶ 1. He has been detained since November 20, 2025, when he was taken into immigration custody during a routine check-in at 26 Federal Plaza. *Id.* ¶ 24. Lim alleges that ICE agents took him into custody at his scheduled check-in without providing the informal interview that ICE's regulations require, thereby violating his due process rights. *Id.* ¶ 28. He further alleges that the official who revoked his OSUP "lacked delegated authority to [do so]." *Id.* ¶ 26.

On January 20, 2026, the Court directed Respondents to clarify whether there is any basis to distinguish this case from this Court's decision in *Zhu v. Genalo*, 798 F. Supp. 3d 400 (S.D.N.Y. 2025), which holds that notice and an informal interview are required to revoke an OSUP under Section 241.4, or *E.M.M. v. Almodovar*, No. 25-cv-08212 (MMG), 2025 WL 3077995 (S.D.N.Y. Nov. 4, 2025), a decision on delegation authority that this Court finds persuasive. Dkt. 7 at 1. On January 22, 2026, Respondents submitted a letter distinguishing *Zhu* on the basis that "ICE served Petitioner with a notice of revocation and provided him an informal interview." Dkt. 9 ("Letter") at 2. However, Respondents conceded that "this case is not distinguishable from Judge Garnett's decision in *E.M.M.*, on the issue concerning whether the official who revoked the [OSUP] was authorized to do so," *id.*, and "resolution on that issue would control the result in this case such that the Court would not need to reach any of the other issues presented," *id.* at 3. To expedite resolution of this matter, "while reserving all rights," the Government incorporated its legal arguments in *E.M.M.* by reference. *Id.* Accordingly, the delegation issue is fully briefed, and, while the Court certainly has questions about the alleged notice and interview process, the Court need not reach that issue and renders its decision on delegation grounds alone.

## III. Factual Background

Lim is a citizen of China. *See* Pet. ¶ 13; Letter at 2. He has been residing in the United States since 1981, when he was admitted to the United States at eleven years old. Pet. ¶ 13. Following certain criminal convictions in 1989, Lim served an approximately 20-year sentence and was scheduled for release in July 2010. *Id.* ¶¶ 15-16. Prior to his release, on July 6, 2010, ICE initiated removal proceedings against Lim based on his convictions. *Id.* ¶ 16. Lim was thereafter transferred directly from criminal custody into immigration custody. *Id.* On August 5, 2010, an immigration judge ordered Lim removed to China. *Id.* ¶ 17; *see* Dkt. 6-2 ("Removal Order"). Lim did not appeal the decision, so the removal order became final that same day. Pet. ¶ 17. He remained in ICE custody through January 5, 2011, when ICE released him on an OSUP because it had been unable to obtain a travel document for his removal. *Id.* ¶ 18; Dkt. 6-3 ("2011 OSUP"). Following his release, Lim built a life for himself. He helped run his brother's business, met his U.S.-citizen partner, and, by 2015, was expecting his first child. Pet. ¶¶ 19-20. While his partner was pregnant, on May 29, 2015, ICE agents again revoked Lim's OSUP and arrested him, claiming that his removal to China was imminent. *Id.* ¶ 21; Dkt. 6-4 ("2015 Revocation Notice"). Lim remained in ICE detention until August 18, 2015, when ICE once again released him on an OSUP. Pet. ¶ 22; *see* Dkt. 9-2 ("2015 OSUP").

Since his latest release, Lim and his partner have grown their family. Lim now has two children. Pet. ¶ 23. In addition to providing "essential assistance" at his brother's business, Lim serves as the primary caregiver for his eighty-five-year-old mother and a caretaker for his other brother. *Id.* ¶¶ 30-32. He has at all times abided by his OSUP's terms. *Id.* ¶ 18.

On November 20, 2025, Lim reported to ICE as a condition of his OSUP. *Id.* ¶ 24. At his check-in, ICE agents took him into custody and served him with a notice of revocation signed by Assistant Field Office Director ("AFOD") Darius Robinson. *Id.* ¶¶ 24-25; *see* Dkt. 9-3

("2025 Revocation Notice").  Lim does not dispute receiving the 2025 Revocation Notice.  Pet. ¶ 25.  Nevertheless, it bears mention that although AFOD Robinson digitally signed the Notice at "12:49:28" on November 20, 2025, the attached Proof of Service states that ICE Officer Giraldo served the Notice at "12[:]45" that day — inexplicably four minutes before it was even executed.  *See* 2025 Revocation Notice at 1-2.  Respondents also contend that ICE then gave Lim an informal interview, *see* Dkt. 9-4 ("Informal Interview"), though Lim disputes this, Pet. ¶ 28.

Lim is currently detained under 8 U.S.C. § 1231(a)(6), pending his removal to China.  Letter at 2.

## LEGAL STANDARD

Lim brings a petition for a writ of habeas corpus under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention."  *Lopez v. Sessions*, No. 18-cv-04189 (RWS), 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516-17 (2003)); *see also Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020).

## DISCUSSION

Lim asserts, *inter alia*, that his detention violates his due process rights because the Government failed to follow its own regulations.  Pet. ¶¶ 71-76, 96-99.  Resolution of the Petition thus turns on whether the Government validly revoked Lim's OSUP pursuant to ICE regulations.  Respondents argue that the revocation was authorized by 8 C.F.R. § 241.4(*l*)(2).  Letter at 2.  The Court disagrees.  The revocation was invalid because the Revocation Notice was not properly authorized.  Accordingly, the Government revoked Lim's OSUP without due

6

process, rendering his detention unlawful. The appropriate remedy is his immediate release from custody.

## I. An AFOD Is Not Authorized Under Section 241.1 to Revoke an OSUP

Respondents have not established that the Notice revoking Lim's OSUP was signed by an official with authority to do so. Section 241.4(*l*)(2) explicitly requires that either the "Executive Associate Commissioner" or a "district director" decide to revoke a noncitizen's OSUP. 8 C.F.R. § 241.4(*l*)(2). The Government argues that AFODs, like Officer Robinson here, may validly revoke OSUPs pursuant to the Delegation Order. *See* Delegation Order; *Funes Gamez*, 2025 WL 3263896, at *19 ("Respondents' argument that the Delegation Order gave [AFODs] authority to revoke OSUPs is based exclusively on the text of that order."). The Order delegates authority "under INA § 241 [8 U.S.C. § 1231] and 8 C.F.R. Part 241" from ICE's Executive Associate Director to "Assistant Field Office Directors." Delegation Order at 2 (alteration in original). It gives AFODs authority "relating to" (1) "warrants of removal," (2) "reinstatement of removal," (3) "self-removal," and (4) "release of [noncitizens] from detention." *Id.* Notably absent from this list of delegated authority is revocation of OSUPs. This omission is dispositive.

"Under the interpretive canon *expressio unius*, the omission of one item from a list of like items implicitly excludes that item." *Funes Gamez*, 2025 WL 3263896, at *19 (collecting cases). Because the Delegation Order enumerates other delegated actions under 8 C.F.R. § 241 but omits OSUP revocation, the *expressio unius* canon precludes reading such authority into the Order. *Id.*; *Roman-Cruz v. Lyons*, No. 25-cv-10522 (RA), 2026 WL 114936, at *2 (S.D.N.Y. Jan. 15, 2026). Indeed, the powers delegated under "8 C.F.R. Part 241" in the Delegation Order mirror the titles of specific subsections of Section 241: "warrants of removal" (§ 241.2), "reinstatement of removal" (§ 241.8), and "self-removal" (§ 241.7). Delegation Order at 2; *see* 8 C.F.R. § 241; *see also Funes Gamez*, 2025 WL 3263896, at *19 n.24. The exception is "release of

7

[noncitizens] from detention," which has no corresponding subsection, but rather roughly aligns with § 241.4 (e)-(f). Delegation Order at 2; *see* 8 C.F.R. § 241; *see also Roman-Cruz*, 2026 WL 114936, at *2 n.1. In contrast, "[r]evocation of release" is a subpart within Section 241.4, which itself is titled "[c]ontinued detention of inadmissible, criminal and other [noncitizens] beyond the removal period." 8 C.F.R. § 241.4. This further suggests that if the Delegation Order intended to delegate revocation authority, it would have listed it explicitly, as it did with the other named sections. *Roman-Cruz*, 2026 WL 114936, at *2 n.1.

Thus, as the court concluded in *E.M.M.*, the omission of revocation of OSUPS from the Delegation Order is "fatal" to Respondents' argument, since "[r]evocation of release . . . is found nowhere in the list of authorities delegated to assistant field office directors in the Delegation Order." *E.M.M.*, 2025 WL 3077995, at *6; *accord Funes Gamez*, 2025 WL 3263896, at *20 ("Respondents have thus not carried their burden to show that the Delegation Order authorized . . . an acting assistant field office director[] to revoke [the petitioner's] OSUP."); *Ceesay*, 781 F. Supp. 3d at 162 ("[T]here is no delegation order clearly giving [an AFOD] the authority to revoke release[.]"); *Roman-Cruz*, 2026 WL 114936, at *2-3 (same); *Zhang v. Genalo*, --- F. Supp. 3d ---, 2025 WL 3733542, at *8 (E.D.N.Y. Dec. 28, 2025) (same); *Zhang v. Bondi*, No. 25-cv-10418 (JPO), 2026 WL 42778, at *4 n.3 (S.D.N.Y. Jan. 7, 2026) (same).

Separately, as the court noted in *Ceesay*, "the language of section 241.4 specifically limits the power of anyone who is not the Executive Associate Director to revoke release," permitting "district director[s]" to do so "only when . . . revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate [Director]." *Ceesay*, 781 F. Supp. 3d at 161-62 (internal quotation marks omitted) (third alteration in original) (quoting 8 C.F.R. § 241.4(*l*)(2)). Respondents do not claim, nor does the record show, that Robinson made such a determination here. Thus, "even if the term 'district

director' might include Robinson's current role as an 'assistant field office director,' which is far from clear, the [G]overnment has not alleged that Robinson made the requisite findings — explicitly or otherwise — before revoking [Lim]'s release." *Id.* at 162.[4]

Respondents' counterargument is unavailing.[5]  In two other cases identified by this Court, the Government has argued "authority 'relating to . . . release of [noncitizens] from detention' necessarily includes 'all release-related authority,' including 'the authority to revoke release.'" *Roman-Cruz*, 2026 WL 114936, at *3 (quoting Government's opposition brief); *see also Funes Gamez*, 2025 WL 3263896, at *19 ("[R]espondents argue that the term 'related to' in the Delegation Order should be read expansively, to pick up non-enumerated agency actions notwithstanding their omission from the order.").  "The Government points in its briefing to cases that stand for the proposition that 'related to' is an expansive term, and argues that it is 'the broadest connective . . . phrase that can be used.'" *Roman-Cruz*, 2026 WL 114936, at *3 (omission in original) (quoting Government's opposition brief); *see id.* (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) and *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128-29 (2d Cir. 2001)); *see also Morales*, 504 U.S. at 383 (finding that "relating to" means "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association or connection with") (quoting Black's Law Dictionary 1158 (5th ed. 1979)); *Coregis Ins. Co.*, 241 F.3d at 128-29 ("The term 'related to' is typically defined more broadly and is not

---

[4] AFOD Darius Robinson, who revoked Lim's OSUP without authorization in this case, also revoked the OSUPs of petitioners in *Ceesay* and *E.M.M.* without authorization.

[5] While the Government incorporated its briefing in *E.M.M.* by reference, Letter at 3, Respondents in *E.M.M.* did not raise the delegation issue until the parties' hearing.  *E.M.M.*, 2025 WL 3077995, at *2 ("During the hearing, the Government provided a delegation order that it contends authorized assistant field office directors to revoke OSUPs[.]").  Thus, to fully address Respondents' position, the Court considers the common counterargument presented in the delegation cases that it has reviewed.

necessarily tied to a causal connection . . . .  Courts have similarly described the term 'relating to' as equivalent to the phrases 'in connection with and 'associated with' . . . [and] broader in scope than the term 'arising out of.'").  The Government's argument fails, however, for two reasons.

First, as the court observed in *Funes Gamez*, "[o]ther Second Circuit decisions, including ones post-dating *Coregis*, have adopted narrower constructions of 'related to.'"  2025 WL 3263896, at \*19.

Second, even accepting the Government's expansive construction of "relating to," the Delegation Order's language does not support Respondents' argument that AFODs are authorized to revoke OSUPs.  As the court observed in *Roman-Cruz*, "[t]he Government's reading would have the Court, in essence, ignore the qualifying phrase 'the release of [noncitizens] from,' which sits just prior to the word 'detention.'"  2026 WL 114936, at \*3.  While the authority to revoke release "ha[s] bearing [on], concern[s]," or "stand[s] in some relation" with detention, *Morales*, 504 U.S. at 383, the canon against surplusage mandates that "no clause, sentence, or word shall be superfluous, void, or insignificant," *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).  Petitioner's reading of the Delegation Order gives full effect to each word, "particularly the preposition 'from,'" *Roman-Cruz*, 2026 WL 114936, at \*3, and is therefore more persuasive than the Government's reading.  *See N.Y. Legal Assistance Grp. v. Bd. of Immigr. Appeals*, 987 F.3d 207, 218 n.19 (2d Cir. 2021) ("[T]he canon against surplusage assists only where a competing interpretation gives effect to every clause and word[.]" (internal quotation marks omitted) (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013)).  "As a result, by conferring authority ['relating to'] 'release . . . *from* detention,' the Delegation Order does not confer authority to take what is effectively the opposite action: placing [noncitizens] *in* detention

10

through the revocation of an OSUP." *Roman-Cruz*, 2026 WL 114936, at \*3 (quoting Delegation Order). "Because [Robinson]'s approval of the revocation was *ultra vires*, the revocation of [Lim's] OSUP was void as unauthorized." *Funes Gamez*, 2025 WL 3263896, at \*20.

## II. Respondents Violated Petitioner's Due Process Rights

ICE violated Lim's procedural due process rights by failing to afford Lim the minimal process mandated by its own regulations. "A person's liberty cannot be abridged without 'adequate procedural protections.'" *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492 (S.D.N.Y. 2025) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)); *see also Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024) (observing that "[c]ase after case instructs us that in this country liberty is the norm and detention 'is the carefully limited exception'" (alteration in original) (quoting *Velasco Lopez*, 978 F.3d at 851). "Requiring the Government to adhere to duly promulgated regulations that protect individuals against the arbitrary deprivation of their liberty is essential to maintaining the rule of law." *Ramirez Lopez v. Trump*, No. 25-cv-04826 (JAV), 2025 WL 3274224, at \*8 (S.D.N.Y. July 10, 2025). Indeed, "[w]hen a government agency promulgates '[r]egulations with the force and effect of law,' they 'supplement the bare bones' of federal statutes." *Calderon v. Sessions*, 330 F. Supp. 3d 944, 957 (S.D.N.Y. 2018) (quoting *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954)). The agency must accordingly "follow its own 'existing valid regulations.'" *Id.* "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974); *see also Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) ("[U]nder deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations.").

Here, ICE claims to have revoked Lim's OSUP.  But that revocation is not valid, because it was effectuated by an official who had no authorization to revoke OSUPs.  While the Government has significant discretion to enforce the immigration laws and, indeed, to pursue removal proceedings against Lim, it must do so consistent with the requirements of its own regulations and the Due Process Clause.  *Cf. Lopez Benitez*, 795 F. Supp. 3d at 499 ("[T]he 'suggestion that government agents may sweep up any person they wish, for [no] reason [whatsoever] . . . so long as the person will, at some unknown point in time, be allowed to ask some other official for his or her release offends the ordered system of liberty that is the pillar of the Fifth Amendment.'" (second and third alteration and omission in original) (quoting *Chipantiza-Sisalema v. Francis*, No. 25-cv-05528 (AT), 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025))).  Because ICE failed to follow its own regulations in deciding to re-detain Lim, the Court concludes that Lim's detention violates due process.  *See, e.g.*, *E.M.M.*, 2025 WL 3077995, at *6 ("[T]he Government violated its regulations in revoking [petitioner]'s OSUP and [petitioner]'s continued detention pursuant to Mr. Robinson's decision is unlawful."); *Roman-Cruz*, 2026 WL 114936, at *2 ("Because the official who revoked [petitioner]'s OSUP was not authorized to do so, by the Delegation Order or otherwise, his Fifth Amendment right to procedural due process was violated."); *Zhu*, 798 F. Supp. 3d at 414 ("ICE's failure to follow its own regulations and provide [p]etitioner with notice or an interview violated [p]etitioner's procedural due process rights."); *O.F.B. v. Maldonado*, --- F. Supp. 3d ---, 2025 WL 3277677, at *7 (E.D.N.Y. 2025) (finding petitioner's due process rights were violated because ICE did not follow its own regulations and conduct a public interest assessment before re-detaining him); *Ceesay*, 781 F. Supp. 3d at 166 ("[B]ecause ICE did not follow its own regulations in deciding to re-detain [petitioner], his due process rights were violated."); *You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 463-64 (S.D.N.Y. 2018) (finding petitioner likely to succeed on the merits of his

12

due process claim against ICE for its failure to follow its own regulations); *Ramirez Lopez*, 2025 WL 3274224, at *8 (same).  Accordingly, the Court will grant Lim's Petition and order his release.  *See, e.g.*, *E.M.M.*, 2025 WL 3077995, at *6 (ordering release to remedy the same procedural error); *Roman-Cruz*, 2026 WL 114936, at *3 (same).

## CONCLUSION

The petition for a writ of habeas corpus is GRANTED.  Respondents are directed to release Lim from custody by **January 26, 2026, at 5 p.m.** and certify compliance with the Court's order by filing an entry on the docket no later than **January 27, 2026, at 12 p.m.**  The Clerk of Court is respectfully directed to close this case.

Dated: January 26, 2026
   New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge